208 A.2d 530.

Olga S. Bartlett vs. Everett Products, Inc.

APRIL 1, 1965.

Present: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Roberts, J. This is an employee's petition to review a decree of the workmen's compensation commission wherein the respondent was ordered to make payments for total and partial incapacity and wherein it was found that the petitioner's incapacity had terminated as of November 9, 1960. The instant petition, filed on January 9, 1963, was denied and dismissed after a hearing by a trial commissioner. The full commission, after a hearing on the petitioner's appeal from the decree of the trial commissioner, affirmed that decree, and the petitioner is prosecuting an appeal therefrom in this court.

The trial commissioner found "That the petitioner has failed to prove by a fair preponderance of credible evidence that any incapacity for work which she had subsequent to November 9, 1960 was due to an injury sustained on May 9, 1959." On appeal the full commission expressly affirmed this finding, which on its face appears to be that petitioner had failed to establish a causal connection between some presently existing incapacity to earn and the injury of May 9, 1959. However, in its decision the full commission appears to have viewed it as a finding that "petitioner had failed to prove by the weight of the evidence that she has had a return or increase in incapacity as a result of her injury of May 9, 1959," or, to put it otherwise, she had proved no loss of present earning capacity as a result of that injury. The full commission clearly attached significance to the impartial medical examiner's testimony that "not only could the petitioner do the same work which she had been doing at the time of her injury but that also her condition was approximately the same as it had been when he had seen her earlier on October 15, 1960."

The petitioner's only contention in this court is directed at the competence of evidence given through an impartial medical examiner. She argues that his testimony that she could perform the work she had been doing at the time of her injury was based upon a misconception of the evidence which described the duties required of her in the performance of that work. She directs our attention to his stated opinion that work which required lifting and bending could not be performed by her. This is the basis of petitioner's argument that there is in the record no competent evidence upon which the commission's finding as to her failure to establish incapacity could be rested.

The petitioner testified that she had been injured on May 9, 1959 while employed by respondent as an inspector of hypodermic needles. She described her work as inspecting

them for defects and stated that it was a part of her duty to carry boxes of such needles to the work bench, which required her to lift and carry boxes that she believed weighed more than twenty-five pounds. She disclosed also that she was not required to remove these boxes of needles after inspection, this being done apparently by another employee of respondent. Both petitioner and her attending physician testified that she presently was unable to perform work of any nature, including her household chores.

Apart from the evidence adduced through petitioner and her attending physician, the only other testimony appearing in the record was given by the impartial medical examiner, who, it appears, had examined petitioner once in 1960 and again in 1963. He stated that it was his opinion that petitioner "was able to return to the kind of work that she described as her job,—that of an inspector of hypodermic needles,—I felt that she should not ever return to heavy work, and I don't think she should lift more than 25 pounds repeatedly or stay in a stooped-over position for a long while." When asked whether petitioner should avoid doing "any work that requires excessive bending or lifting," he replied: "That's right." When asked whether he would recommend that petitioner go back to work on a full-time basis even at light work he replied: "I don't know.—I,— maybe if she could go back to half-time work for two weeks or something like that. But I don't believe in dragging that out for a long while."

We are persuaded that petitioner is in fact challenging the probative force of the testimony of the impartial medical examiner on the issue of her loss of earning capacity as a result of her injury on May 9, 1959. The situation is similar to that with which we were confronted in *United Wire & Supply Corp.* v. *Frenier,* 87 R. I. 31. After a close examination of the evidence adduced through the impartial medical examiner concerning petitioner's ability to perform

the duties involved in her prior employment, we are persuaded that he did not misconceive the character of those duties. The negative nature of the commission's finding tends to obscure the relevance of the medical witness' opinions on the issue. However, negative findings in the absence of fraud are conclusive upon this court if supported by legally competent evidence. *DeFusco* v. *Ochee Spring Water Co.*, 84 R. I. 446. The commission drew a negative inference on the question of petitioner's capacity to earn from other evidence relating to her ability to perform the duties of her prior employment, which is a finding of fact upon which the decision reached may properly rest. *Spolidoro* v. *United States Rubber Co.*, 72 R. I. 269.

The petitioner contends that the doctor testified that she should not lift objects weighing more than twenty-five pounds repeatedly or remain in a bending position for a long time and that this testimony should not be construed as meaning that she can perform the duties of her former employment, such lifting and bending being a part thereof. However, upon examination of the record, the doctor's testimony clearly was that she should not lift objects weighing more than twenty-five pounds *repeatedly* or remain in a bending position *for a long while*. Thus, the testimony actually given is susceptible of a reasonable inference that because the duties of her prior employment as disclosed in the record required neither *repeated* lifting of such weights nor *excessive* bending, she could perform the duties thereof.

The petitioner challenges also the inferential potential of the testimony of the medical witness given in response to an inquiry as to whether he would recommend that she ought to go back to work on a full-time basis even to do light work, so called. He testified, in response to this inquiry, that maybe she could go back to work half-time for two weeks but qualified that testimony by a statement that he did not believe this part-time work should be extended

over a long period of time. It is our opinion that it may be reasonably inferred therefrom that he was contemplating that petitioner for a short time might engage in part-time work so as to become accustomed or seasoned to the conditions of her prior employment.

It is our opinion that when the evidence is viewed in this light, it is clear that the commission based its negative finding that the petitioner had failed to establish a want of earning capacity on the inferences to which we above refer. In short, the commission drew reasonable inferences from the testimony of the impartial medical examiner that she could perform the duties involved in her prior employment, neither repeated lifting of heavy objects nor excessive bending being required therein. We are constrained to conclude then that the finding under challenge is supported by legally competent evidence and, therefore, will not be disturbed by this court.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Dick & Carty, Joseph E. Marran,* for petitioner.

*Matthew E. Ward,* for respondent.

208 A.2d 741.
CHARLES J. DONNELLY, INC. *vs.* DONNELLY BROS., INC. (DONNELLY, INC.) AND THOMAS C. P. DONNELLY.

APRIL 5, 1965.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

PER CURIAM. This petition for a writ of certiorari was brought to review and correct a final decree of the superior court which allegedly imposes on the petitioner Thomas C. P. Donnelly a greater restraint in the use of his surname than that which was approved by this court in *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.*, 97 R. I. 377, 198 A.2d 41, pursuant to which the decree complained of in these proceedings was entered. We issued the writ on the further allegation that because of circumstances, the recitation of which would serve no relevant purpose here, the time for taking an appeal had passed and the petitioners having no other adequate remedy suffer and will continue to suffer great harm unless the final decree is corrected so as to conform with our holding.

An examination of the pertinent records which were certified from the superior court in accordance with the mandate of the writ discloses that petitioners, respondents in the above-entitled cause, and Charles J. Donnelly, Inc., complainant therein, separately operate mercantile establishments as competitors; that the controversy which resulted in the instant proceedings has been litigated on two previous occasions; and that these are reported in *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.*, 96 R. I. 255, 191 A.2d 143, and *id.*, 97 R. I. 377, 198 A.2d 41, to which reference is made for a detailed travel of the cause.

The record further discloses that after the cause had been remanded to the superior court for entry of a new decree in accordance with our holding in the last-cited case, an amended decree was entered April 9, 1964, the first paragraph in the order of which is as follows:

"1. That Thomas C. P. Donnelly and Donnelly, Inc., formerly Donnelly Bros., Inc. be and hereby are

permanently enjoined from using the words 'Donnelly, Inc.'; and from using the surname 'Donnelly' by enlarging thereon or by resorting to a styling which would tend to identify him with a complainant beyond the limits of that which is unavoidable; from using the surname 'Donnelly' with other words which would tend to identify him with complainant beyond the limits of that which is unavoidable; and from using the surname 'Donnelly' or its possessive form with an underline in any form, whether the underline extends the full length of the word or not and whether it is an extension of the tail of the letter 'Y' or not and whether the letters are in a reverse slant, upright or in forward slant."

The petitioners contend that the injunctive relief therein accorded to complainant exceeds that authorized in *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.*, 97 R. I. 377, 379, 198 A.2d 41, at page 42, and is as follows:

"We concluded thereby that respondent was entitled to use his surname 'Donnelly' provided he did not enlarge thereon by resorting to a styling which would tend to identify him with complainant beyond the limits of that which is unavoidable."

They argue that from a fair reading of the foregoing quotation the first paragraph of the order in the decree should be amended to read as follows:

"a) From using the name 'Donnelly' alone or in its possessive form with a styling or with other words which complainant has pre-empted and which would tend to identify him with complainant.

"b) From using the name 'Donnelly' alone or in its possessive form with an underline irrespective of whether such underline is an extension of the tail of the letter 'Y' and irrespective of whether the underline extends the full length of the word, and irrespective of whether the letters are in a reverse slant, upright or in forward slant."

In urging an adoption by this court of the foregoing proposed order as being a fair declaration of petitioner Thom-

as C. P. Donnelly's right to the use of his surname, there is a manifest misconception of the scope of our decision in *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.,* 97 R. I. 377, 198 A.2d 41. There we were concerned with and directed the modification of a single segment of the order contained in the final decree entered April 16, 1962. It was as follows:

> "1. That Thomas C. P. Donnelly and Donnelly, Inc., formerly Donnelly Bros., Inc., be and hereby are permanently enjoined, in the trade and/or in dealings with the public, from using * * * the word 'Donnelly' * * *."

The injunctive relief accorded by the decree was in all other respects, we held, conformable to our decision in *Charles J. Donnelly, Inc.* v. *Donnelly Bros., Inc.,* 96 R. I. 255, 191 A.2d 143.

*Matthew E. Ward,* for Charles J. Donnelly, Inc. (respondent in certiorari).

*Charles Cottam,* for Donnelly Bros., Inc. and Thomas C. P. Donnelly (petitioners in certiorari).